**RECORD NO. 17-1517**

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

**DOMINANT INVESTMENTS 113, LLC,**

*Plaintiff-Appellant,*

**v.**

**UNITED STATES LIABILITY
INSURANCE COMPANY**

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

_____

OPENING BRIEF OF PLAINTIFF-APPELLANT
_____

C. Thomas Brown, Esquire
SILVER & BROWN
Suite 101
10621 Jones Street
Fairfax, Virginia 22030-0000
(703) 591-6666 (Telephone)
tom@virginia-lawyers.net

Counsel for Plaintiff-Appellant

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __17-1517__    Caption: __Dominant Investments 113, LLC v. United States Liability Insurance__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Dominant Investments 113, LLC__
(name of party/amicus)

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?   ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
      If yes, identify all such owners:

08/05/2015 SCC                                    XXX

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ C. Thomas Brown         Date:   May 3, 2017

Counsel for: Appellant

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on   May 3, 2017   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Stacey Ann Moffet, Esquire
ECCLESTON & WOLF, PC
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, Maryland 21076

/s/ C. Thomas Brown            May 3, 2017
    (signature)                    (date)

XXX

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE

TABLE OF CONTENTS …………………………………………………………. i

TABLE OF AUTHORITIES………………………………………………….. iii

JURISDICTIONAL STATEMENT……………………………………………. 1

STATEMENT OF ISSUES………………………………………………….. 1

STATEMENT OF THE CASE…………………………………………………… 2

SUMMARY OF ARGUMENT……………………………………………. 5

ARGUMENT………………………………………………………………… 8

I.     Md. Code, Ins. § 27-603 abolished the common law right of
       rescission in the commercial insurance policy context based on
       legislative history to that act, related statutes, and a comparison
       of four different statutory schemes governing insurance in Maryland…….. 8

II.    The Two Maryland Endorsements to the policy change and limit
       the insurers' contractual remedies in the event of a misrepresentation
       on the application or related to the covered property to a
       cancellation after notice for any misrepresentation or to a policy
       defense for intentional misrepresentations……………………………….. 21

III.   The insured in this case was unaware that there was any written
       application at all and therefore had no "means to ascertain" that
       there was a potential misrepresentation concerning the "Year Built"
       information generated internally between the insurer and the
       insurance agent, thus making the mistake of fact a unilateral mistake
       by the insurer and not grounds for rescission of the policy………………. 27

IV.    Whether the "Year Built" information on the application
       was either misrepresented or material was not proven by clear
       and convincing, undisputed evidence, when viewed in the light
       most favorable to the nonmoving party and therefore remains a
       question for the jury to decide………………………………………….. 31

i

CONCLUSION…………………………………………………………….. 35

REQUEST FOR ORAL ARGUMENT…………………………………….. 36

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(C)(i)…………... 38

CERTIFICATE OF SERVICE……………………………………………... 39

# TABLE OF AUTHORITIES

### Federal Cases

Certain Underwriters at Lloyd's, London v. Cohen,
    785 F.3d 886 (4th Cir. 2015)……………………………………….. 31-32

Encompass Home & Auto Ins. Co. v Harris,
    93 F.Supp.3d 424 (D. Md 2015)……………………………………….. 17

Gill v. Rollins Protective Servs. Co.,
    773 F.2d 592 (4th Cir.1985)…………………………………………… 31

Newton v. Employers Liab. Assur. Corp.,
    107 F.2d 164 (4th Cir. 1939)………………………………………… 14

U.S. v. Diebold,
    369 U.S. 654 (1962)…………………………………………………… 31

### State Cases

Bernhardt v. Hartford Fire Ins. Co.,
    102 Md. App. 45 (1994)………………………………………………... 25

Guardian Life Ins. Co. of Am. v. U.S. Tower Servs., Ltd.,
    122 Md. App. 550 (1998)……………………………………………… 13

Heslop v. Dieudonne,
    209 Md. 201 (1956)…………………………………………………….. 30

Ins. Com'r of State of Md. v. Mut. Life Ins. Co. of N.Y.,
    111 Md. App. 156 (1996)
    aff'd sub nom. Mut. Life Ins. Co. of N.Y. v.
    Ins. Com'r for State of Md., 352 Md. 561 (1999)………………………… 15

Maryland-Nat'l Capital Park & Planning Comm'n v. Washington Nat. Arena,
    282 Md. 588 (1978)…………………………………………………….. 21

Progressive Cas. Ins. Co. v. Ehrhardt,
    69 Md. App. 431 (1986)…………………………………………….... 29

Serdenes v. Aetna Life Ins. Co.,
  21 Md. App. 453 (Md. Ct. Spec. App. 1974)……………………………... 28

Stiegler v. Eureka Life Ins. Co. of Baltimore,
  146 Md. 629 (1925)………………………………………………………….. 22

Valley Forge Life Ins. Co. v. Liebowitz,
  No. CIV.A. DKC 2003-1809,
  2005 WL 600330, at *7 (D. Md. Mar. 15, 2005)………………........ 29-30

Van Horn v. Atl. Mut. Ins. Co.,
  334 Md. 669 (1994)………………………………………………………… 19-20

Woodmont Country Club v. Montgomery Co.,
  61 Md. App. 229 (1985)…………………………………………………… 11-12

## Federal Rules

Rule 56 of Federal of Civil Procedure…………………………………………….. 2

## Maryland Code Sections

Md. Code, Ins. § 16-205…………………………………………………… 18

Md. Code, Ins. § 25-401…………………………………………………… 15-16

Md. Code, Ins. § 25-402…………………………………………………… 16

Md. Code, Ins. § 25-406…………………………………………………… 16

Md. Code, Ins. § 27-601…………………………………………………... 8

Md. Code, Ins. § 27-603………………………………………………….. *passim*

Md. Code, Ins. § 27-612…………………………………………………… 14

## Other Authorities

Legislative History of 2014 amendments to Md. Code, Ins. Subtitle 6…………. 12

## JURISDICTIONAL STATEMENT

This is an appeal of a final order of the United State District Court for the District of Maryland entered on March 27, 2017 granting summary judgment in favor of the Defendant, United States Liability Insurance Company and against the Plaintiff, Dominant Investments 113, LLC.   Appx. 629.[1]  A timely Notice of Appeal was filed by the Plaintiff on April 18, 2017 as required by the Federal Rules of Civil Procedure.  Appx. 630.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

The United State District Court for the District of Maryland had jurisdiction over the underlying action under 28 U.S.C. §1332(a) following its removal from the Circuit Court for Baltimore County pursuant to 28 U.S.C. 1441 as the matter in controversy exceeded the sum or value of $75,000, exclusive of interest and costs and was between citizens of different States.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The error in granting summary judgment in this case is founded on four, independently sufficient, errors of law:

(1)    First, the trial court erred by ignoring the fact that the Maryland General Assembly abolished the common law right of rescission for insurers who enter into commercial property insurance contracts by enacting Md. Code, Ins. Article § 27-603 which was intended to assure that property owners in Maryland can maintain coverage during the

---

[1] References within this Brief to the Appendix will be denoted as "Appx. [page number] ."

term of the policy, notwithstanding any misrepresentations or fraud on the application, unless and until they are given statutory notice and an opportunity to replace that insurance;

(2)    Second, the trial court erred by ignoring the plain language of the contract of insurance which contractually limited the insurance company's remedy for unintentional misrepresentations contained in the application to cancellation and further conditioning that cancellation upon the insurer providing the statutorily required 45-day notice to the insured prior to cancellation;

(3)    Third, the trial court erred by failing to consider that the insured had no knowledge of any written application for insurance and therefore had no "means to ascertain" that there was a potential inaccuracy concerning the "Year Built" information that was generated between the insurer and the insurance agent, thereby rendering the mistake of fact, if there was one, a unilateral mistake made by the insurer which would not provide a legal basis for rescission of the policy;

(4)    Fourth, the trial court erred by granting summary judgment, at minimum, by failing to view the evidence in the light most favorable to the non-moving party because the "Year Built" information on the application form as completed by the insurer was itself ambiguous and the evidence concerning the truth of the matter, the circumstances surrounding its creation, and its materiality was disputed thereby creating a disputed issue of material fact that would preclude the granting of summary judgment.

Each of these errors of law are addressed below, seriatim.

## **STATEMENT OF THE CASE**

This appeal seeks a *de novo* review of the trial court's interpretation and construction of Maryland insurance law, its interpretation of an insurance policy, and its grant of summary judgment under Fed. R. Civ. P. 56. The underlying case arose out of a fire loss at a building located at 5008 Cedar Avenue, Baltimore,

2

Maryland that was in the process of being renovated when a fire occurred.  Appx. 8.

The insurer denied the claim in part based on a claimed rescission of the policy *ab initio* and the insured ultimately filed suit.   The parties brought cross motions for summary judgment on various issues, only one of which was decided by the trial court.

In its decision, the United States District Court for the District of Maryland (Honorable Richard D. Bennett) improperly granted summary judgment to the insurer, United States Liability Insurance Company ("USLI") on the sole ground that the insurer was entitled to rescind the commercial property policy of insurance *ab initio* where there had been an unintentional[2] misrepresentation on a written application for insurance.   Appx. 614-628.  The trial court summarily rejected the argument that Md. Code. Ins. § 27-603 forbids mid-term cancellations of commercial property policy for misrepresentations on the application unless and until the insured has been provided 45-day notice and that the statute must also bar rescission *ab initio* on the exact same grounds.  Any other interpretation would render the statute meaningless and without legal effect.  Appx. 620-621.

The alleged misrepresentation in this case was that next to the words "Year Built," was the date "1939," which unbeknownst to the insured had been typed onto

_____

[2] The insurer conceded at oral argument on the motion for summary judgment that it was "not here today to say that the insured intentionally misrepresented anything."  See Appx. 541.

3

the application by either the insurance company or the insurance agent.  See
Application at Appx. 137-139. The insured never signed the application and never
had any knowledge of its existence prior to the fire loss.  Appx. 334 and Appx 339.
The signature on the application is not that of the insured.  Compare signature at
Appx. 337 with Appx. 139.

The trial court erred by holding that this innocent mistake, if indeed there was
a mistake at all, was a sufficient ground for the insurer to rescind the policy *ab
initio* based on an affidavit from the insurance company's employee that states it
does not insure buildings built prior to 1900.  In this case, there is a dispute of
material fact as to when the building was actually built as the Maryland Inventory
of Historic Properties claims a building was built circa 1890, Appx. 622, while the
Maryland State Department of Assessments and Taxation claims it was built in
1900.  Appx. 358 and 148.  More importantly, the court ignored the fact that if there
was a mistake in the application, the insured was innocent of the mistake as the
application, including the allegedly mistaken construction date, was generated
solely by the insurer or the insurance agent.

In either event, the insured had no way of knowing that the date 1939 was
ever placed on any application because the insured was never on notice that there
was a written application for insurance in this case at all.  Instead, the insurer and/or
the insurance agent were solely responsible for the typewritten insertion of a

4

purportedly incorrect date on the policy application.  Likewise, the signature on the application was generated by the insurer or the insurance agent but not by the insured.  Appx. 358.  The affidavit of the insurance agent states that he told USLI the year built was "1900" from the SDAT source and USLI pre-filled in the number as 1939 instead.  Appx. 358 at ¶ 4-8.  According to the supplemental affidavit of the insurance agent, his employer insurance agency had an agency contract with the Defendant Insurance Company, was paid a commission by the Defendant Insurance Company, and was the agent of the Defendant Insurance Company.  Appx. 582.

## SUMMARY OF ARGUMENT

Each of the issues in this case are errors of law in granting summary judgment in this case, each of which may be considered *de novo* by this Court.

As of 2007, the Maryland General Assembly abolished the common law right of rescission by defining and limiting insurer's remedies for misrepresentations or fraud on an insurance application for commercial property insurance.  Md. Code Ins § 27-603.  Now, an insurer who discovers an innocent misrepresentation on an application has the choice to cancel the policy mid-term, wait and non-renew the policy at the end of the term, or ignore it.  It does not have the option to rescind or void the policy *ab initio*.  If the insurer elects to cancel or non-renews the policy, it must notify the insured of the cancellation, explain the reasoning behind the cancellation, advise the insured of the availability of alternative insurance under the

Maryland Property Insurance Act, and continue to provide insurance coverage to the insured for 45 days after sending this notice.   All of these requirements are matters of public policy intended to allow insureds to maintain continuous coverage for "essential property insurance" and to avoid lapses in coverage caused by ignorance of available alternatives to the private insurance market.  See Maryland Property Insurance Act at Md. Code, Ins. § 25-401, et seq.

Every tenet of statutory interpretation requires that these statutes be interpreted broadly to abolish the right to rescind commercial property insurance mid-term without notice.  The legislative history of the 2014 amendment to the statute states that since 2009 this was the law of cancellations, rescissions, terminations and nonrenewals of policies of insurance.  The purpose behind this statute and the related Maryland Property Insurance Act is to maintain coverage for essential insurance, defined as including fire insurance, for commercial and residential properties in Maryland.  If insurers are permitted to rescind a policy *ab initio* upon the discovery of an innocent misrepresentation on an application, such as the trial court ruled in this case, these cancellation statutes would have no effect and offer none of the protections for which they were enacted.

The insurance policy in this case mirrors the Maryland code and the insurer modified its nationwide boilerplate forms with two Maryland endorsements.  Both endorsements state that the insurer may cancel the policy mid-term for

misrepresentations or fraud on the application, after 45 days notice.  Importantly, one of the forms changes a statement which allows for the policy be to "void" if there is an intentional misrepresentation and changes it to say "it shall be a policy defense" if there is an intentional misrepresentation.  Therefore, the plain intent of both the General Assembly, and the parties to this contract of insurance, reveals that the insurer's common law right to rescission *ab initio* for misrepresentations in the application was intended to be superseded, abolished, or waived.

Even in cases involving life insurance policies, where the right to rescind still exists in a truncated form, the facts of this case are inconsistent with rescission of a contract based on misrepresentation because in this case the insured had no "means to ascertain" that there had been an application, a representation, or a misrepresentation at all.  The insured never saw or knew about the application.

Finally, there are material facts in dispute concerning the circumstances surrounding the application and its contents precluding summary judgment especially when the evidence is considered in the light most favorable to the non-moving party.

# ARGUMENT

I. **Md. Code, Ins. § 27-603 abolished the common law right of rescission in the commercial insurance policy context based on legislative history to that act, related statutes, and a comparison of four different statutory schemes governing insurance in Maryland.**

The common law right of rescission is incompatible with the statutory requirement that a policyholder be notified of the availability of alternative insurance prior to mid-term cancellation of a policy for misrepresentations or fraud on an insurance application.   Therefore, the common law right of rescission has been abolished by Md. Code, Ins. § 27-603 for commercial insurance policies.  Md. Code, Ins. § 27-601, et. seq., is part of a comprehensive set of insurance statutes that has as one of its purposes to allow persons and entities to maintain continuous insurance coverage over personal and commercial property, including automobiles, without interruption, by limiting the events that would allow an insurer to cancel or reduce coverage mid-term and by requiring the insurer provide ample notice to the insured of any event that would potentially result in a loss or reduction of coverage. Here, where the insurer has alleged only that there was an innocent material misrepresentation in an application for commercial property insurance, the common law remedy of rescission has clearly been preempted, superseded and abrogated by statute.  Md. Code, Ins. § 26-603 states in full:

## "27-603. Notice of cancellation or nonrenewal; commercial insurance

### Application of section

(a)(1) This section applies only to policies of commercial insurance.

(2) This section does not apply to:

(i) policies in effect for 45 days or less, as provided in § 12-106 of this article; or

(ii) policies issued to exempt commercial policyholders under § 11-206 of this article, if the policies provide for written notice of not less than 30 days of the insurer's intent to cancel or nonrenew.

### Notice to insured of possible right to replace insurance

(b)(1) Whenever an insurer, as required by subsection (c) of this section, gives notice of its intention to cancel or not to renew a policy issued in this State for a reason other than nonpayment of premium, the insurer shall notify the insured of the possible right to replace the insurance under the Maryland Property Insurance Availability Act,[3] through the Maryland Automobile Insurance Fund, or through another plan for which the insured may be eligible.

(2) The notice required by paragraph (1) of this subsection shall:

(i) be in writing;

(ii) if applicable, include the current address and telephone number of the offices of the Joint Insurance Association, the Maryland Automobile Insurance Fund, or other appropriate plan; and

(iii) be sent to the insured in the same manner and at the same time as the first written notice of cancellation or of intention

_____

[3] Md. Code, Ins., § 25-401 et seq.

not to renew that is given or required by law, regulation, or contract.

### Notice of intention to cancel for reason other than nonpayment of premium

(c)(1) Subject to paragraph (5) of this subsection, at least 45 days before the date of the proposed cancellation or expiration of the policy, the insurer shall send to the insured, by a first-class mail tracking method or by commercial mail delivery service, written notice of intention to cancel for a reason other than nonpayment of premium or notice of intention not to renew a policy issued in the State.

(2) The insurer shall maintain proof of mailing in a form authorized or accepted by the United States Postal Service or other commercial mail delivery service.

(3) Notice given to the insured by an insurance producer on behalf of the insurer is deemed to have been given by the insurer for the purposes of this subsection.

(4) No notice is required under this subsection if the insured has replaced the insurance.

(5) An insurer may not cancel a policy midterm except:
   (i) when there exists:

      1. a material misrepresentation or fraud in connection with the application, policy, or presentation of a claim;

      2. a matter or issue related to the risk that constitutes a threat to public safety; or

      3. a change in the condition of the risk that results in an increase in the hazard insured against;

   (ii) for nonpayment of premium; or

   (iii) due to the revocation or suspension of the driver's license or motor vehicle registration:

10

1. of the named insured or covered driver under the policy; and

2. for reasons related to the driving record of the named insured or covered driver.

**Written notice of intention to cancel for nonpayment of premium**

(d) At least 10 days before the date an insurer proposes to cancel a policy for nonpayment of premium, the insurer shall send to the insured, by a first-class mail tracking method, a written notice of intention to cancel for nonpayment of premium.

**Failure of insured to make required payment by renewal date**

(e)(1) If an insurer provides a renewal policy and notice of premium due to an insured at least 45 days before the renewal date of the policy and the insured fails to make the required payment by the renewal date, the insurer may terminate the policy on the renewal date for nonpayment of premium after sending to the insured, by a first-class mail tracking method, a written offer to reinstate the renewal policy without lapse in coverage.

(2) An offer to reinstate under this subsection shall provide not less than 10 days for the insured to make the required premium payment."

Md. Code, Ins. Article § 27-603. Thus, in section (c)(5) of this statute, the sole remedy for a material misrepresentation or fraud in connection with the application is mid-term cancellation after 45-days notice. The Maryland Court of Appeals stated the black letter law on statutory interpretation: "Statutes should be construed reasonably and with reference to the purposes to be accomplished. Statutory construction which leads to results that are unreasonable, illogical or inconsistent with common sense is to be avoided." Woodmont Country Club v. Montgomery

Co., 61 Md. App. 229, 236, 486 A.2d 218 (1985) (citations omitted).  In allowing for a common law remedy of rescission in the commercial property context based on an unintentional misrepresentation, the trial court eviscerated the notice requirement of Md. Code Ins. § 27-603 by permitting an end-run around the provision.  If the remedy of rescission were permitted, the statutory notice will be rendered useless and without any effect.

This is why the legislative history of these statutes makes clear that the General Assembly intended the words "cancel" and "cancellation" to be broadly construed to cover "rescission, cancellation, nonrenewal, or termination of an insurance policy or binder." See Legislative History of 2014 amendments to Md. Code, Ins. Subtitle 6.  The Department of Legislative Services of the Maryland General Assembly in its 2014 Session published a Fiscal and Policy Note to Senate Bill 977 (Amending subtitle 6 of title 27 of the Md. Insurance Code dealing with Unfair Claim Practices) states:

> "*Under current law*, **the following insurers are required to notify insureds and applicants of specified information and notify insureds when the insurer takes specified actions related to the rescission, cancellation, nonrenewal, or termination of an insurance policy or binder.** All of these notices are required to be sent by certificate of mail. *Under the bill*, the notices are required to be sent using a "first-class mail tracking method," as defined above."

Legislative History of 2014 amendments to Md. Code, Ins. Subtitle 6. (Emphasis in bold supplied).   Thus, the legislature expressly intended "cancel" and

"cancellation" to supplant rescission *ab initio* based on mistakes in an application. The words "cancel" and "cancellation" in Md. Code, Ins. § 27-603 cover cancellations, terminations and rescissions not only because the legislative history shows that intent, but also because it is part of a broader, statutory framework aimed at remediating the dual harms of having uninsured buildings becoming blights on neighborhoods and of leaving secured lenders and injured persons without a remedy.

At the hearing on this matter, the insurer advocated for and the trial court erroneously adopted a flawed reading of this statute by narrowly construing the words "cancel" and "cancellation" in Md. Code § 27-603 in subparts (b) and (c) to exclude rescission and therefore preserve the common law equitable remedy of rescission.  Appx 537-541.  The Maryland Court of Appeals has previously noted that rescission and cancellation can mean the same thing depending on the context. Guardian Life Ins. Co. of Am. v. U.S. Tower Servs., Ltd., 122 Md. App. 550, 562–63, 714 A.2d 204, 210 (1998) ("The words "cancel" and "rescind," in this context, are synonymous.")  More fundamentally, however, the failure to treat cancellation in the statute as superseding the common law right of rescission defeats the entire purpose of the remedial statutory framework created by the General Assembly.  The statute is aimed at remedying the harm of insurers pulling the proverbial rug out from under insureds mid-term.

13

Here, the subtitle containing Md. Code, Ins. §27-603 is a remedial statute. It is titled "Cancellations, Nonrenewals, Premium Increases, and Reductions in Coverage" and is part of the "Unfair Trade Practices and Other Prohibited Practices" Title. These statutes are expressly designed to stop abusive post-loss or mid-policy term cancellations by insurance companies. This Court has consistently held that "[o]ne of the ancient canons of interpretation is that the old law, the mischief and the remedy must be considered, and be given an interpretation, if possible, which will suppress the mischief and advance the remedy." Newton v. Employers Liab. Assur. Corp., 107 F.2d 164, 167 (4th Cir. 1939). Here, the mischief is insurance companies taking premiums and then cancelling a policy *ab initio* after the loss and after the time when an insured could find replacement coverage causing communities to bear the cost of demolished and condemned properties; the remedy is 45-days notice, advising the insured of alternative insurance availability, and only permitting mid-term cancellations for material misrepresentations, fraud, and other such exceptions. To those ends the statutory framework states that whenever "an insurer fails to comply with any provision of § 27-602, § 27-603, § 27-604, § 27-605, § 27-606, § 27-607, § 27-608, § 27-610, or § 27-613 of this subtitle, the insurer is liable to the applicant for the coverage that was requested, or that would have become effective except for the failure to comply with these provisions…[.]" Md. Code, Ins. § 27-612.

14

Remedial statutes are broadly construed. The Maryland Court of Appeals stated that ""[w]hen construing a statute, our governing principle must be the Legislature's intent because, as [the Court of Appeals has] ... consistently stated, the cardinal rule in statutory construction is to effectuate the Legislature's broad goal or purpose."" Ins. Com'r of State of Md. v. Mut. Life Ins. Co. of N.Y., 111 Md. App. 156, 186, 680 A.2d 584, 599 (1996), aff'd sub nom. Mut. Life Ins. Co. of N.Y. v. Ins. Com'r for State of Md., 352 Md. 561, 723 A.2d 891 (1999) (quoting Armstead v. State, 342 Md. 38, 56, 673 A.2d 221 (1996) (citing Gargliano v. State, 334 Md. 428, 435, 639 A.2d 675 (1994))). Here, the plain language of Md. Code Ins. § 27-603 should be broadly construed, against the insurers and in favor of insureds. Md. Code Ins. § 27-603 should be construed to affect the purpose of the Maryland Property Insurance Act, which it references.

The Maryland Property Insurance Act explicitly governs the insurance at issue here by defining "Essential property insurance" as "insurance against direct loss to property from the perils of fire, lightning, removal, explosion, windstorm, hail, smoke, aircraft, vehicles, riot, civil commotion, or vandalism…[.]" See Md. Code, Ins. § 25-401, et seq. The Maryland Property Insurance Availability Act is a program created by the legislature to ensure that even properties that cannot obtain

insurance in the private market because of underwriting guidelines of private

insurers[4] are still able to be insured.  It states:

> "A person with an insurable interest in real or tangible personal
> property at a fixed location may apply to the Association for essential
> property insurance or homeowner's insurance if the person has been:
>
> (1) unable to obtain essential property insurance or homeowner's
> insurance;
> (2) able to obtain essential property insurance or homeowner's
> insurance only after application under § 11-210 or § 11-311 of this
> article; or
> (3) able to obtain only partial coverage for the value of the property."

Md. Code, Ins. § 25-401, et seq. at § 25-406.  The purpose of this statute, which

works hand-in-hand with Md. Code, Ins. § 27-603 is to maintain insurance over

property in the state by "publiciz[ing] the purposes and procedures of this subtitle

so that no one fails to seek assistance from the Association because of ignorance"

and "utilize[ing] fully the voluntary insurance market as a source of essential

property insurance and homeowner's insurance" to "encourage the improvement of

the condition of properties located in the State" and to "further orderly community

development in general."  See Md. Code, Ins. § 25-402 Purposes of Subtitle.

Thus, critical to the understanding of Md. Code Ins. § 27-603, is that any

notice of mid-term cancellation is required to advise the insured of the availability

---

[4] In this case, the insurer stated that it simply does not underwrite properties built
before the year 1900.  Upon the discovery of the mistake in the application, it was
obligated to maintain coverage for the statutory 45 days and notify its insured of the
availability of alternative essential property insurance coverage through the
Maryland Property Insurance Availability Act.

of alternative insurance through the Maryland Property Insurance Availability Act. See Md. Code Ins. § 27-603 (b)(1). This provision is how the 45-day, first-class mail notice requirements set forth by § 27-603(c) provides a remedy to any and all kinds of mid-term cancellations of the policy. Here, the property is exactly the kind of property that these statutes are intended to protect. Obviously, if insurers are still permitted to rescind a policy *ab initio* for an innocent mistake on the application, they could do so in lieu of cancellation in every instance where they might otherwise cancel under the statute and render the entire statute meaningless.

Further, the trial court erred in this case because it relied exclusively on the case of Encompass Home & Auto Ins. Co. v Harris, 93 F.Supp.3d 424 (D.Md 2015) to interpret the Maryland insurance statutes at issue. Appx. at 621. Yet, the Court in Encompass, supra did not cite, much less interpret any Maryland notice statutes. Instead, Encompass cited to property cases decided before Md. Code Ins. §27-603 was enacted and also to life insurance cases which were wholly distinguishable from the case at bar. All of the life insurance cases relied on by both the Court in Encompass and by the trial court in this case are inapposite to cases involving property insurance because life insurance is governed by a completely separate statutory framework than automobile insurance, homeowner's insurance, and commercial property insurance. Although a limited right of rescission still exists in the life insurance policy framework, the Maryland Code also contains numerous

17

protective safeguards against insurers collecting premiums for years and then contesting liability based on innocent material misrepresentations on the application after death.  Specifically, each and every life insurance policy in Maryland must contain the provision that it "shall contain a provision that the policy is incontestable, except for nonpayment of premiums, after the policy has been in force during the lifetime of the insured **for 2 years after its date of issue.**"  See Md. Code, Ins. § 16-203. (emphasis supplied).  Further, "[i]f an application or policy expressly limits the insurable age and the correct age at the date of issue is outside the insurable age limit, the policy is voidable at the option of the insurer during the lifetime of the insured, **but not later than 3 years after the date of issue of the policy.**"  See Md. Code, Ins. § 16-205. (emphasis supplied).  These protective safeguards are consistent with a legislative intent to preserve a limited remedy of rescission solely in the context of life insurance, but that also protects insureds from unscrupulous insurers who only seek to rescind insurance policies who suffer losses, but continue to collect premiums from insureds who do not suffer losses.

In contrast to life insurance, the commercial property insurance statute at Md. Code, Ins. § 27-603 mirrors language in Md. Code, Ins. § 27-602 for personal insurance and homeowner's insurance and § 27-613 for private passenger motor vehicle insurance all of which also prevent cancellation, termination, nonrenewal or

rescission absent a 45-day notice and an explanation of the reasoning. The extension of this 45-day notice requirement to commercial property insurance did not occur until 2007, but for motor vehicle policies, the common law right of rescission was expressly held to have been abrogated by the passage of its statutory framework in 1973. The Maryland Court of Appeals stated:

> "For the reasons set forth below, we hold that an insurer's common law right to void *ab initio* an automobile insurance policy, when the applicant had made a material misrepresentation in the application for the policy, has been statutorily abrogated with regard to claims of persons not involved in making the misrepresentation. Furthermore, the common law right to void the policy under these circumstances has been abrogated as to the entire policy coverage.
>
> …
>
> Ch. 73 of the Acts of 1972 added to the Insurance Code new § 240AA, setting forth detailed procedures which must be followed before an insurance company can cancel, refuse to renew, refuse to underwrite, or reduce  *682 the coverage of a motor vehicle insurance policy. Section 240AA requires the insurance company to send the insured notice in triplicate of the proposed cancellation, nonrenewal, etc., at least 45 days before the effective date of the proposed action. The notice must set forth the reasons for the proposed action in "clear and specific" language, must inform the insured of the right to replace the insurance through MAIF, and must inform the insured of his right to file a protest with the Insurance Commissioner and to request a hearing before the Commissioner by signing two copies of the notice and sending them to the Commissioner. At the hearing before the Commissioner, "the burden of persuasion shall be upon the insurer to demonstrate" that the termination or reduction in coverage is permitted by the standards set forth in the Insurance Code. See § 234A(a). Underscoring the legislative policy that there be an insurance policy in force at all times on Maryland vehicles, § 240AA provides that if the insured files a protest with the Insurance

Commissioner, the insurance policy shall remain in force until a final decision on the protest (§§ 240AA(b)(7), 240AA(e)).”

Van Horn v. Atl. Mut. Ins. Co., 334 Md. 669, 680, 641 A.2d 195, 200 (1994) (holding that only prospective cancellation is permitted under the statutory framework on automobiles in place for 20 years at the time of the decision). The holding of Van Horn, supra is analogous and applicable to the case at bar. For commercial property insurance, the relevant statutes became effective on January 1, 2007 and there is no binding case law on this precise issue. Since the statute became effective, however, it has been amended both in 2009 and 2014 to make the notice requirements more stringent evincing a legislative intent to maximize insurance coverage over commercial property by making cancelation mid-term more difficult.

Thus, the lower court erred by relying on Encompass while ignoring that the legislative intent derived from the plain language, contextual statutes, and the legislative history of Md. Code, Ins. 27-603 and related statutes, such as the Maryland Property Insurance Act. It is respectfully submitted that had the Court properly analyzed and construed the statutory scheme and considered the material facts in disputes, it would have properly held that summary judgment in favor of the insurer was not appropriate and denied the insurer's motion.

## II.    The Two Maryland Endorsements to the policy change and limit the insurers' contractual remedies in the event of a misrepresentation on the application or related to the covered property to a cancellation after notice for any misrepresentation or to a policy defense for intentional misrepresentations.

The trial court failed to address or consider the clear and unambiguous language in the policy that states that the remedy for a misrepresentation on the application is a cancellation of the policy after notice or a defense to coverage in the event that the misrepresentation was intentional. There are two Maryland Endorsements in the policy each of which contain contractual limitations of remedies that expressly deal with misrepresentations or fraud on the application. By contract, the insurer agreed not to cancel the policy for misrepresentation or fraud on the application except after providing a 45-notice prior to cancellation of the policy. Here, where the parties have expressly contracted for the potential situation where there was a misrepresentation on the policy, they are bound by their agreement. Contractual limitations of remedies are enforceable unless prohibited by statute. See Maryland-Nat'l Capital Park & Planning Comm'n v. Washington Nat. Arena, 282 Md. 588, 611, 386 A.2d 1216, 1231 (1978).

In its motion for summary judgment, the insurer did not dispute that the contractual limitation on remedies in the case of misrepresentation of the application existed, but argued that it was boilerplate language that only applied to rescission of the liability portion of a contract. See Appx. at 183. There was

21

absolutely no basis for this argument and it misstates the common law of rescission. A "contract must be rescinded in its entirety. It may not be affirmed in part and rejected in part. When the choice is once made, it is conclusive, and the rejected alternative is precluded. A contract cannot be valid and void at the same time." Stiegler v. Eureka Life Ins. Co. of Baltimore, 146 Md. 629, 127 A. 397, 403 (1925). Contrary to the insurer's argument, the Maryland Endorsements affect the entire policy.  There are two Maryland Changes Endorsements to the policy, CP 217 (05-10) and IL 02 07 04 11, in the policy, which apply the limitation of remedies uniformly to all coverage parts, including the liability form, the builders risk form, and the commercial property form.

The principal section concerning cancellation is found in the Common Policy Conditions of the policy under ¶ A Cancellation.  See Appx. 47.  The Common Policy Conditions appropriately begin with the phrase, "All Coverage Parts including in this policy are subject to the following conditions."  Id.  The Common Policy Conditions are modified by the CP 217 (05-10) Maryland Changes Endorsement.

UNITED STATES LIABILITY INSURANCE GROUP
WAYNE, PENNSYLVANIA

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
COMMON POLICY CONDITIONS
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
BUILDERS RISK COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM
STANDARD PROPERTY POLICY

MARYLAND CHANGES

See Appx. 97. Page 1 of Maryland Changes Endorsement, CP 217 (05-10). This endorsement modifies ¶ A Cancellation of the Common Policy Conditions to match the cancellation law found at Md. Code, Ins. § 27-603.  It states in relevant part:

**b.** Forty-five (45) days before the effective date of cancellation if we cancel for a permissible reason other than nonpayment of premium, stating the reason for cancellation. Under this Paragraph **(3),** we may cancel only for one or more of the following reasons:

**(1)** When there exists material misrepresentation or fraud in connection with the application, policy, or presentation of a claim.

**(b)** A change in the condition of the risk that results in an increase in the hazard insured against.

**(c)** A matter or issue related to the risk that constitutes a threat to public safety.

See Appx. 98. Page 2 of Maryland Changes Endorsement, CP 217 (05-10) (numbering error in original form). This language also appears in a second Maryland Changes Endorsement that specifically applies to the commercial property coverage part.

23

IL 02 07 04 11

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MARYLAND CHANGES

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

Id. See Appx. 50. Page 1 of Maryland Changes Endorsement, IL 02 07 04 11.



(2) 45 days before the effective date of cancellation if we cancel for a permissible reason other than nonpayment of premium, stating the reason for cancellation. Under this Paragraph (2), we may cancel only for one or more of the following reasons:

(a) When there exists material misrepresentation or fraud in connection with the application, policy, or presentation of a claim.

(b) A change in the condition of the risk that results in an increase in the hazard insured against.

(c) A matter or issue related to the risk that constitutes a threat to public safety.

If we cancel pursuant to Paragraph b.(2), you may request additional information on the reason for cancellation within 30 days from the date of our notice.

See Appx. 50. Page 1 of Maryland Changes Endorsement, IL 02 07 04 11.    It defies common sense that the agreement of the parties would repeatedly identify rights of the insured with respect to cancellation in the event of a material misrepresentation or fraud on the application, yet preserve a common law right of rescission that makes those rights meaningless.

Importantly, the IL 02 07 04 11 Form goes farther than the CP 217 (05-10) Form by explicitly removing the right to "void" the policy based on an intentional misrepresentation by the insured found in the Commercial Property Conditions. Contrast Maryland Changes Endorsement, Appx. 50-52 at ¶ H with Commercial Policy Conditions, Appx. 122 at ¶ A. The insurer invited error on the trial court by citing to the original, unchanged policy form and misstating that the right to void the policy remained in effect. See Appx at 184. The endorsement makes the intent of the parties to the contract of insurance crystal clear: the right to "void" the policy for intentional misrepresentation has been removed in favor of a policy defense. Appx. at 52. This is a difference with a distinction: Here, where the insurer only alleged an innocent mistake, it is not a defense to the policy under the Commercial Policy Conditions as amended. Even if it were an intentional misrepresentation, the insurer has contracted away its right to void the policy by amendment to its original contract. By ignoring the plain language of the contract, the trial court has allowed a judicial end-run around the manifest intention of the parties. "It is not the function of courts to rewrite the contracts of parties, even when enforcement of the contract as written may result in hardship." Bernhardt v. Hartford Fire Ins. Co., 102 Md. App. 45, 57, 648 A.2d 1047, 1052 (1994). The Maryland Endorsements are clearly intended to modify the policy to comply generally with the Md. Insurance Code by removing any right to rescind *ab initio*.

25

The Insurer admitted that it was not accusing its insured of intentionally misrepresenting the "Build Year" as 1939 instead of 1900 or 1890, but instead moved for summary judgment on the ground that it was entitled to rescind the policy based on an innocent misrepresentation in the application. Appx 554. Pursuant to the plain language of the policy, an unintentional misrepresentation on an application is not even a defense to coverage and may only be grounds for mid-term cancellation of the policy after 45-days notice. Counsel for the insured shared the following exchange with the lower court:

> "…And as we've noted in our papers, Your Honor, to rescind an insurance policy or any contract based on a material misrepresentation does not require a finding that the insured acted intentionally or fraudulently. There just has to be a misrepresentation. Whether it was in good faith and negligent is really immaterial at this point in time.
> As your Honor has already noted, there –
> **The Court:** I think that basically if I look through these materials, I think it's the Hancock case that established that as a matter of law under Maryland law.
> **Ms. Moffet:** Absolutely, Your Honor.
> **The Court:** To my knowledge, that's been the law in Maryland for over 50 years.
> **Ms. Moffet:** Correct, Your Honor. And there's no dispute about that. **And we're not here today to say that the insured intentionally misrepresented anything.** There's just a misrepresentation.…"

As a note, the <u>Hancock</u> case is a 1954 life insurance case that has been thoroughly modified by the life insurance statutory framework including but not limited to the two-year statutory incontestability requirement for all life insurance policies sold in the state. It has no application to commercial property insurance

issued in Maryland in the last decade (or even to life insurance contracts beyond two years) because other statutory frameworks now govern cancellation, rescission, non-renewals and terminations.

Thus, the trial court erred by failing to apply the plain language of the policy which sets forth the parties' intentions with regard to the remedy for misrepresentations on the application.

**III.    The insured in this case was unaware that there was any written application at all and therefore had no "means to ascertain" that there was a potential misrepresentation concerning the "Year Built" information generated internally between the insurer and the insurance agent, thus making the mistake of fact a unilateral mistake by the insurer and not grounds for rescission of the policy.**

It is an undisputed fact in this case is that the insured had no knowledge whatsoever that the insurance agent, Mr. Gottlieb, and/or an unknown underwriting employee with USLI had put an incorrect date on the insurance application and then signed the insureds' manager's name on that application. The insured did not know there was a written application at all until the insurer claimed there was a misrepresentation on the written application. Moshe Rubin denied under oath that he signed any application or knew an application was made. See ¶¶ 6-12 of Mr. Rubin's affidavit at Appx 334 and 337. Although the application purports to be signed by Moshe Rubin, the signature is obviously not his and he was not aware anyone was signing his name. Compare the signature on the affirmation at Appx 337:

I declare under penalty of perjury that the foregoing is true and correct.

_____

Moshe M. Rubin

With the signature on the application at Appx 139:

Applicants Signature*: _____ Title: OWNER _____ Date: 12/1/14
Broker Signature:            (Must be Owner, Officer or Partner)    (Required)              (Required)

This is why the insurer did not argue and the trial court did not find that it was an

undisputed fact that the insured signed, or even knew about, the application.

Yet, without actual knowledge of an application (the best evidence of which

is often a signature) there cannot ever be grounds for a rescission based on a

misrepresentation in that application.  The trial court correctly stated that the

common law on misrepresentations in an application for life insurance in Maryland

is set forth by the Serdenes v. Aetna Life Ins. Co., 21 Md.App. 453, 319 A.2d 858

(Md.Ct.Spec.App.1974), but failed to identify the key distinction between Serdenes

and its progeny and the case at bar.  Namely, in Serdenes, unlike here, "the assured

ha[d] the **means to ascertain** that the application contains false statements."

Serdenes, 21 Md. App. at 461.  As explained by later Courts:

> "It is not the signature itself which is determinative, **but the
> opportunity for inspection which it represents.** *See Shepard v.
> Keystone Ins. Co.,* 743 F.Supp. 429, 432–33 (D.Md.1990) (the
> question is "whether the insured had the means of knowing that false
> answers had been supplied"); *Foreman v. Western Reserve Life
> Assurance Co. of Ohio,* 716 F.Supp. 879, 883 (D.Md.1989)

28

(citing *Serdenes'* "means to ascertain" test and stating that "where the insured *has an opportunity to read over the policy before signing and then signs it,* he represents that what has been recorded is true and is legally responsible for any material misrepresentations") (emphasis added)."

Valley Forge Life Ins. Co. v. Liebowitz, No. CIV.A. DKC 2003-1809, 2005 WL 600330, at *7 (D. Md. Mar. 15, 2005). The insured in this case fails the "means to ascertain" test because he had no knowledge of any representation at all, much less that the representation was a misrepresentation. The fact that the insurance agent or the representative of USLI combined to write a policy application that contained a type written misrepresentation and then the insurance agent signed it, both of which actions occurred without the insureds knowledge, is also dispositive.

The trial court essentially held that the acceptance of the policy, even without knowledge of an application, was a ratification of the misrepresentation by the insurance agent. Yet, "[r]atification requires an intention to ratify, *Linden Homes Inc. v. Larkin*, 231 Md. 566, 570, 191 A.2d 441 (1963), **and knowledge of all material facts.** *Smith*, 266 Md. at 539, 295 A.2d 474; 3 Am.Jur.2d Agency § 189 (1986)." Progressive Cas. Ins. Co. v. Ehrhardt, 69 Md. App. 431, 442, 518 A.2d 151, 156 (1986) (emphasis in bold supplied). Here, where the insured did not know that there was a policy application at all it had no "means to ascertain" that there was a potential misrepresentation and its acceptance of the policy could not ratify

the misrepresentation because the insured did not have knowledge of all the material facts.

Finally, "[i]n the usual case, the existence of an agency relationship is a question of fact." Heslop v. Dieudonne, 209 Md. 201, 206, 120 A.2d 669 (1956). Here, the insurance agent claimed to be acting as an agent of the insurer when he solicited the policy of insurance. This is consistent with the general law on insurance agents. Insurance agents are typically construed as legal agents of the insurers for whom they solicit policies. Valley Forge Life Ins. Co. v. Liebowitz, No. CIV.A. DKC 2003-1809, 2005 WL 600330, at *4 (D. Md. Mar. 15, 2005) In Valley Forge, the Court held that the knowledge of an insurance agent is imputed to the insurer, despite the fact that the insurance agent in that case was the father of the insured. It made this ruling despite the fact that the father/insurance agent filled in the misrepresentation on the son's application, which the son then signed. The insurer was held to have had constructive notice of the true state of facts because its agent knew them. Here, the existence of an actual agency agreement between the insurance agent and the insurer demonstrates that Mr. Gottlieb was the agent of the insurer when he and the insurer combined to make a mistake on the policy application.

Therefore, even if the common law remedy of rescission were not superseded by both statute and contract, it simply does not apply to the facts of this case.

**IV.  Whether the "Year Built" information on the application was either misrepresented or material was not proven by clear and convincing, undisputed evidence, when viewed in the light most favorable to the nonmoving party and therefore remains a question for the jury to decide.**

Finally, the trial court erred by failing to consider the evidence in the light most favorable to the nonmoving party.  When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. See U.S. v. Diebold, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Gill v. Rollins Protective Servs. Co., 773 F.2d 592, 595 (4th Cir.1985). The trial court assumed that there was a misrepresentation by paraphrasing the relevant question and answer on the application, failing to consider conflicting evidence concerning when the property was built, and failing to consider whether reasonable minds could differ on whether the pre-typed answer was either a misrepresentation by the insured or material to the risk in this case. "Ordinarily and generally, whether a representation is true or false, or material to the risk, is for the jury to determine," but when the insurer demonstrates falsity and materiality "by uncontradicted or clear and convincing evidence[,] the question may be one of law." Certain Underwriters at Lloyd's, London v. Cohen, 785 F.3d 886, 890 (4th Cir. 2015) (quoting Monumental Life Ins. Co. v. Taylor, 212 Md. 202, 129 A.2d 103, 106-107 (1957).  Here, the evidence was neither uncontradicted, nor clear and convincing and therefore the matter was inappropriate for summary judgment.

31

In 2015, the Fourth Circuit, reversed and remanded a trial court's grant of summary judgment to an insurer based on misrepresentations in a policy application where the where the questions posed on the application were ambiguous. <u>Certain Underwriters at Lloyd's, London v. Cohen</u>, 785 F.3d 886, 890 (4th Cir. 2015). There, a doctor applying for disability insurance made the following statements in response to questions on an application:

"Are you actively at work? Yes.

Are you aware of any fact that could change your occupation or financial stability? No.

Are you a party to any legal proceeding at this time? No."

The Fourth Circuit, applied the law of interpreting insurance policies that "Policy terms are given "their ordinary and accepted meanings," and "[t]he test is what meaning a reasonably prudent layperson would attach to the term." <u>Id.</u> Policy language is ambiguous if it is "general" and "suggest[s] two meanings to a reasonably prudent layperson."' <u>Id.</u> (internal citations omitted). It held that even though Dr. Cohen had his license to practice medicine suspended prior to answering these questions, the questions were ambiguous based on the totality of circumstances.

In the case at bar, the application did not ask any question and no answer was provided by the insured or his agent. It simply stated "Year Built: <u>1939</u> with all that information pre-printed on the application prior to it being sent to the agent.

| Location #1 | | | | | | |
| Address | | City | | State | | Zip |
| 5008 Cedar Ave. | | Arbutus | | MD | | 21227 |
| Years At Current Location: | 0 | | | | | |
| Construction: Frame | | | Protection Class: 3 | | | |
| No. of Stories: 2 | Year Built: | 1939 | Total Square Footage: 1,725 | | | |

See Appx. 137-139. Whether the preprinted Year Built information is a statement by the insurance company as to its understanding as to when the last building was built on the property, or when the last major renovation to the property took place, or its best evidence as to when the original property was built is completely ambiguous.

By his own admission, the insurance agent, Michael Gottlieb, told a USLI underwriter on the phone that the property was built in 1900 based on information gleaned from SDAT, but the USLI employee sent him an application with 1939 pre-typed into the application. Affirmation of Gottlieb at Appx. 358. Mr. Gottlieb was USLI's agent at the time. He apparently failed to notice the difference and someone other than the insured signed Mr. Rubin's name to the application and forwarded it back to the insurer. Had the the mistake been 1939 instead of 1900, then the mistake would have been immaterial based on USLI's own underwriting guidelines which state that they insure houses built on or after 1900. Regardless, even if the "Year Built" sought a warranty of the exact date the structure was built, that exact year is matter of disputed fact in this case.

33

There are conflicting public records concerning when the primary structure located at 5008 Cedar Ave was built.  The insurance agent says he always uses SDAT as his source of information.  Affirmation of Gottlieb at Appx. 358 stating that Maryland State Department of Assessments and Taxation shows the property build date as 1900:

| Primary Structure Built | Above Grade Living Area | Finished Basement Area | Property Land Area | County Use |
|---|---|---|---|---|
| 1900 | 1,738 SF | | 27,000 SF | 04 |

| Stories | Basement | Type | Exterior | Full/Half Bath | Garage | Last Major Renovation |
|---|---|---|---|---|---|---|
| 2 | YES | STANDARD UNIT | ASBESTOS SHINGLE | 1 full | | |

SDAT listing at Appx. 148. In contrast, the Maryland Inventory of Historic Properties, Inventory No. BA-2382 accessed by the trial court online at on March 20, 2017 at Appx 622, states:

> BA-2382    **RILEY HOUSE** - c. 1890 - 5008 Cedar Avenue, Relay.  Frame
> house in Queen Anne style, composition shingle wall cover-
> ing; 2½ stories; jerkinhead cross-gable facing the street.
> Set back from the street.   The Charles Galloway house in
> 1898 Bromley Atlas, Plate 8.  Owner:  Etta W. Riley.

The Court is not permitted to take judicial notice of one public record of fact and reject another contradictory public record of fact on summary judgment.  Here, the "c." in "c. 1890" means "circa" which is a synonym for "approximately."  It is a disputed fact that the building that was on the property at the time of the loss was actually built in 1890 or some other date.  Maybe the original building was rebuilt

34

sometime after its original construction and SDAT's record reflects that the building lost some aspect of its original character[5].

Regardless, where there is a disputed issue of fact with respect to either the misrepresentation itself or the materiality of that representation, it is a question for the jury. A jury would not necessarily accept the testimony of the USLI underwriter or a portion of their underwriting guidelines that states that they do not write insurance for houses older than 1900. USLI did not introduce any evidence that houses built immediately before 1900 were any riskier than houses built on or after 1900. Instead, USLI apparently decided arbitrarily that it does not write insurance for houses older than 1900. Without some evidence or inference that explains how houses built in "circa 1890" are materially riskier to insure than houses built in 1900, the insurer failed to meet its burden of proof for the purposes of summary judgment.

## CONCLUSION

The Courts' holding that the application contained a material misrepresentation and therefore the defendant was entitled to rescind the Policy was erroneous as a matter of fact and as a matter of law and ought to be reversed.

---

[5] Where a building has been rebuilt over the years, a reasonable jury could hold that it is no longer the same building. The Ship of Theseus is a classic Greek paradox reported by Plutarch in which a legendary ship was kept as a memorial by the Athenians, but over the decades all the boards were replaced due to rot. There is no correct answer whether it is the same ship or not.

Rescission *ab initio* is not permitted for commercial property policies issued after January 1, 2007 by statute. The contract of insurance in this case was modified by endorsement to remove the right to void the policy for intentional misrepresentation on the application and further contains an express remedy for unintentional misrepresentations on the application that is identical to the statutory cancellation. Further, the undisputed facts of this case do not permit rescission because the insured had no "means to ascertain" any potential misrepresentation and never knew the material facts to ratify the misrepresentation. Finally, the facts concerning whether the "Year Built: 1939" was inserted in the application by the insurer or the insurance agent is at issue along with the actual date the building was erected. These issues are material and are disputed and should have precluded the granting of summary judgment.

For the reasons stated, the Plaintiff respectfully requests that the Order of the Trial Court be reversed and the case remanded for further proceedings including trial.

## ORAL ARGUMENT IS RESPECTFULLY REQUESTED

Respectfully submitted,


DOMINANT INVESTMENTS 113, LLC
By Counsel


/s/ *Charles Thomas Brown*
Charles Thomas Brown, Esquire #17339
**SILVER & BROWN**
A Professional Corporation
10621 Jones Street, Suite 101
Fairfax, Virginia 22030
(703) 591-6666
(703) 591-5618 – Facsimile
tom@virginia-lawyers.net
*Counsel for Plaintiff*

**Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

**1.** This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[ x] this brief contains ___8636___ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), excepting portions of text appearing as images because they are direct copies from the appendix, *or*

**2.** This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ ] this brief has been prepared in a proportionally spaced typeface using [*state name and version of word processing program*] in [*state font size and name of type style*], *or*

[ x] this brief has been prepared in a proportional, serif typeface using *Microsoft Word 2008* with Times New Roman 14 point.


_____/s/ *Charles Thomas Brown*_____
C. Thomas Brown, Attorney for Plaintiff/Appellant

Dated: _____7/12/2017_____

38

# CERTIFICATE OF SERVICE

I certify that on <u>July 12, 2017</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Stacey A. Moffet, Esq.
Eccleston & Wolf, P.C.
7240 Parkway Drive, 4th Floor
Hanover, MD 21076

/s/ Charles Thomas Brown
_____
Signature

7/12/2017
_____
Date

39